## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

**TEXO FUND II GP, LLC,**

Plaintiff

v.

**STEVEN GELBARD, MD,
ASG OPERATIONS, LLC, RELIFE
MEDICAL INSTITUTE, INC., and
RELIFE MIAMI INSTITUTE, LLC.**

Defendants

**Case No. 6:19-cv-00510**

**JURY TRIAL DEMANDED**

## ORIGINAL COMPLAINT

Plaintiff TEXO Fund II GP, LLC, ("Plaintiff" or "TEXO") hereby asserts the claims for fraud and fraudulent inducement and declaratory judgment against Defendants and Steven Gelbard, MD ("Gelbard"), ASG Operations, LLC ("ASG"), ReLife Medical Institute, Inc. ("ReLife Medical"), and ReLife Miami Institute, LLC. ("ReLife Miami") (collectively "Defendants"), and alleges, on information and belief, as follows:

## NATURE OF THE ACTION

1.     Plaintiff asserts causes of action for fraud and fraudulent inducement against the Defendants.

2.     In addition, this is an action for declaratory judgment pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201–2202, and Rule 57 of the Federal Rules of Civil Procedure.

## THE PARTIES

3.     TEXO Fund II GP, LLC is a limited liability company organized and existing under the laws of the Texas with its principal place of business at 6101 West Courtyard Drive, Suite 2-225, Austin, Texas 78730.

4.     Gelbard is an individual that is a resident of the State of Florida with a mailing address of 1441 Brickell Ave, Suite 300, Miami, Florida 33131.

5.     ASG is a Florida limited liability company with its principal place of business at 1441 Brickell Ave, Suite 300, Miami, Florida 33131.

6.     ReLife Medical is a Florida corporation with its principal place of business at 1435 Brickell Ave, Sky Lobby Suite 301, Miami, Florida 33131.

7.     ReLife Miami is a Florida limited liability company with its principal place of business at 1441 Brickell Ave, Suite 300, Miami, Florida 33131.

8.     Gelbard is the manager of ASG.

9.     Gelbard is the president of ReLife Medical

10.    Gelbard is the manager of ReLife Miami.

11.    ASG may be served with process through its registered agent: Registered Agents Inc. at 7901 4th Street North, Suite 300, St. Petersburg, Florida 33702.

12.    ReLife Medical may be served with process through its registered agent: Steven Gelbard at 1435 Brickell Ave, 3rd Floor Sky Lobby Suite 301, Miami, Florida 33131.

13.    ReLife Miami may be served with process through its registered agent: Steven Gelbard at 1441 Brickell Ave, Suite 300, Miami, Florida 33131.

## JURISDICTION AND VENUE

14.    Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

15.     Plaintiff TEXO is a Texas limited liability company with its principal place of business in Texas.

16.     Defendant Gelbard is a resident of the State of Florida.

17.     Defendant ASG is a Florida limited liability company with its principal place of business in Florida.

18.     Defendant ReLife Medical is a Florida corporation with its principal place of business in Florida.

19.     Defendant ReLife Miami is a Florida limited liability company with its principal place of business in Florida.

20.     Complete diversity of citizenship exists between Plaintiffs and the Defendants.

21.     The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

22.     Venue in the Western District of Texas is proper pursuant to 28 U.S.C. § 1332 because a substantial part of the events or omissions on which the claims asserted herein are based occurred in this District.

## FACTUAL BACKGROUND

23.     ASG was formed on August 17, 2018.

24.     ReLife Medical was formed on December 12, 2018.

25.     ReLife Miami was formed on August 12, 2019.

26.     At all times relevant, Gelbard was an agent and representative for ASG, ReLife Medical, and ReLife Miami.

27.     ReLife Miami and ReLife Medical are separate entities and neither does business under the other's name.

28.     ReLife Medical has not been converted into ReLife Miami.

29.     ReLife Medical has not merged with ReLife Miami.

30.     On June 6, 2019, Gelbard signed a Finder's Fee Agreement (the "FFA").

31.     According to the FFA, the parties were Douglas R. Baum and ReLife Miami-Institute, LLC.

32.     However, ReLife Miami did not exist at the time Gelbard signed the FFA.

33.     Additionally, although Mr. Baum signed on April 30, 2019 and the agreement purported to become effective on April 30, 2019, Gelbard purposefully delayed signing the agreement until June 6, 2019.

34.     Per the terms of the FFA, Mr. Baum would be compensated if Mr. Baum located an investor that invested in ReLife Miami-Institute, LLC.

35.     Per the terms of the FFA, the FFA is governed by the laws of the State of Texas.

36.     Per the terms of the FFA, the services provided by Mr. Baum was explicitly limited. In particular the FFA states:

> **Limitation of Service.** This Agreement relates solely to Consultant's services as a finder in introducing Client to prospective Investors. There are no additional services that Consultant is required to perform, or will perform, to be entitled to the above compensation in the event an investment is made. Consultant will not engage in any negotiations whatsoever on behalf of Client or any Investor. Nor will Consultant provide Client or any Investor with information, which may be used as a basis for such negotiations. Consultant will have no responsibility for, nor will Consultant make recommendations concerning the terms, conditions or provisions of, any agreement between Client and an investor, including the manner or means of consummating the transaction.

37.     Per the terms of the FFA, the FFA can only be changed by agreement and the FFA contains the entire agreement between the parties. In particular the FFA states:

**Miscellaneous.** This Agreement shall be binding upon all parties and their respective estates, heirs, successors and permitted assigns. This Agreement may be changed only by the written consent of all parties. This Agreement may not be assigned by either party without the written consent of the other. This Agreement is the entire agreement between the parties. Should any legal proceeding be necessary to construe or enforce the provisions or this Agreement, then the prevailing party in such legal action shall be entitled to recover all com1 costs, reasonable attorney fees and costs of enforcing or collecting any judgment awarded. The judgment by any court of law that a particular section of this Agreement is illegal shall not affect the validity of the remaining provisions.

38.   The FFA was never amended.

39.   Before and after the execution of the FFA, Gelbard made material misrepresentations and omissions regarding the condition and character of himself, ASG, ReLife Medical, ReLife Miami, and the business venture under consideration to Mr. Baum.

40.   At the time, Gelbard knew his misrepresentations and omissions were material information and he intended use these misrepresentations and omissions to deceive Mr. Baum.

41.   Mr. Baum relied upon Gelbard's misrepresentations and omissions to his detriment. But for Gelbard's misrepresentations and omissions, Mr. Baum would not have entered into the FFA nor would he have introduced TEXO as a potential investor.

42.   Based on Gelbard's misrepresentations and omissions, Mr. Baum introduced TEXO as a possible investor pursuant to the FFA.

43.   Thereafter, Gelbard made material misrepresentations and omissions regarding the condition and character of himself, ASG, ReLife Medical, ReLife Miami, and the

business venture under consideration to TEXO, TEXO's agents, and TEXO's representatives.

44.     At the time, Gelbard knew his misrepresentations and omissions were material information and he intended to use these misrepresentations and omissions to deceive TEXO, TEXO's agents, and TEXO's representatives.

45.     TEXO relied upon Gelbard's misrepresentations and omissions to its detriment. But for Gelbard's misrepresentations and omissions, TEXO would not have explored any potential investment related to Gelbard.

46.     Based on Gelbard's misrepresentations and omissions, on July 5, 2019, a draft letter of agreement ("Draft LOA") was sent to Gelbard for review.

47.     The Draft LOA was from Plaintiff and addressed to ReLife Miami Institute.

48.     At the time the Draft LOA was provided, ReLife Miami did not exist.

49.     The Draft LOA was never executed by Plaintiff or any other entity.

50.     According to the notices provided in the Draft LOA, "[n]o legally binding obligation on the part of Texo will be created until the execution of a definitive purchase agreement with respect to the Transaction."

51.     TEXO has not executed a purchase agreement with respect to any transaction described in the Draft LOA.

52.     Based on Gelbard's misrepresentations and omissions, on August 7, 2019, a revised redlined draft letter of agreement (the "Revised Draft LOA") was sent to Gelbard for review.

53.     The Revised Draft LOA was from Plaintiff and addressed to ReLife Miami Institute.

54.     At the time the Revised Draft LOA was provided, ReLife Miami Institute did not exist.

55.     The Revised Draft LOA was never executed by Plaintiff or any other entity.

56.     According to the notices provided in the Revised Draft LOA, "[n]o legally binding obligation on the part of Texo will be created until the execution of a definitive purchase agreement with respect to the Transaction."

57.     TEXO has not executed a purchase agreement with respect to any transaction described in the Revised Draft LOA.

58.     The Plaintiff never had an exclusive opportunity to invest in ASG, ReLife Medical, ReLife Miami, and any other entity associated with Gelbard.

59.     In an email dated August 21, 2019 (the "email"), Gelbard rejected the Revised Draft LOA and made several false assertions. In particular, Gelbard alleged TEXO "essentially misrepresent[ed]" an offer to invest because it provided a Revised Draft LOA, after TEXO learned of some, but not all, of the material misrepresentations and omissions by Gelbard.

60.     In the email, Gelbard also wrongly asserted Plaintiff had an exclusive investment opportunity and made representations that Plaintiff and Gelbard had agreed to terms to an investment.

61.     In the email, Gelbard falsely asserts that he faces possible damages as the result of TEXO not investing based on agreed terms.

62.     At no time has TEXO agreed to terms with Gelbard or any Defendant to invest with an entity associated with Gelbard.

63.     Based on the totality of circumstances, including Gelbard's misrepresentations and omissions and false statements in the August 21, 2019 email, TEXO notified Gelbard that TEXO has no interest in investing and will not invest in any entity associated with Gelbard.

64.     Based on Gelbard's misrepresentations and omissions, TEXO has expended resources, time, and costs to investigate the business opportunity, including the character of Gelbard.

65.     But for Gelbard's false and misleading material misrepresentations and omissions, TEXO would not have expended the resources, time, and costs to investigate the opportunity.

66.     TEXO has not entered into any contractual agreement, written or oral, with Gelbard.

67.     TEXO has not entered into any contractual agreement, written or oral, with ASG.

68.     TEXO has not entered into any contractual agreement, written or oral, with ReLife Medical.

69.     TEXO has not entered into any contractual agreement, written or oral, with ReLife Miami.

## COUNT I

### Fraud

70.     Plaintiff hereby incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

71.     Defendants, by and through the acts of Gelbard, made material representations and omissions that were false.

72.    The Defendants knew the representations and omissions were false or made them recklessly as a positive assertion without any knowledge of its truth.

73.    The Defendants intended to induce the Plaintiff to act upon the representations and omissions.

74.    The Plaintiff actually and justifiably relied on the representations and omissions, which caused injury to Plaintiff.

## COUNT II

### Fraudulent Inducement

75.    Plaintiff hereby incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

76.    Defendants, by and through the acts of Gelbard, made material representations and omissions that were false.

77.    Defendants were aware that these material misrepresentations and omissions were being made.

78.    The Defendants' material misrepresentations and omissions were made with the intent that Plaintiff would act upon them.

79.    Plaintiff, did, in fact, act upon these material misrepresentations and omissions.

80.    Based on acting on Defendants' material misrepresentations and omissions, Plaintiff was harmed to its detriment.

## COUNT III

### Declaratory Judgment that the Draft LOA was Never Executed

81.    Plaintiff hereby incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

82.     None of the parties ever executed the Draft LOA.

83.     Because of the facts described in the foregoing paragraphs, an actual controversy of sufficient immediacy exists between the parties as to whether the parties ever formed an agreement according to the Draft LOA.

## COUNT IV

### Declaratory Judgment that the Revised Draft LOA was Never Executed

84.     Plaintiff hereby incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

85.     None of the parties ever executed the Revised Draft LOA.

86.     Because of the facts described in the foregoing paragraphs, an actual controversy of sufficient immediacy exists between the parties as to whether the parties ever formed an agreement according to the Revised Draft LOA.

## COUNT V

### Declaratory Judgment that the Parties Never Formed an Agreement to Invest

87.     Plaintiff hereby incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

88.     None of the parties ever formed an agreement to invest in any entity associated with Gelbard.

89.     Because of the facts described in the foregoing paragraphs, an actual controversy of sufficient immediacy exists between the parties as to whether the parties ever formed an agreement to invest in an entity associated with Gelbard.

## COUNT VI

### Declaratory Judgment that TEXO Never Made a Misrepresentation

90.     Plaintiff hereby incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

91.     TEXO never made a material misrepresentation to Defendants upon which Defendants justifiably relied upon.

92.     Because of the facts described in the foregoing paragraphs, an actual controversy of sufficient immediacy exists between the parties as to whether TEXO made any material misrepresentations that Defendants justifiably relied upon.

## COUNT VII

### Declaratory Judgment that any Agreement was Fraudulently Induced by Defendants

93.     Plaintiff hereby incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

94.     Should this Court find the parties formed any agreement, any such agreement is unconscionable and the result of fraud. Accordingly, any such agreement is unenforceable and not binding on TEXO.

95.     Because of the facts described in the foregoing paragraphs, an actual controversy of sufficient immediacy exists between the parties as to whether the Defendants may bring a claim based on its fraudulent inducement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment as follows:

A.      Declaring that Defendants' acts constituted fraud;

B.     Awarding TEXO damages for Defendants' fraudulent acts;

C.     Declaring that the Defendants' acts constituted fraudulent inducement;

D.     Awarding TEXO damages for Defendants' fraudulent inducement;

E.     Declaring that the Draft LOA was never executed;

F.     Declaring that the Revised Draft LOA was never executed;

G.     Declaring that the parties never formed an agreement to invest in an entity associated with the Defendants.

H.     Declaring that TEXO never made a material misrepresentation;

I.     Declaring that any agreement between the parties is unenforceable;

J.     Awarding TEXO its costs, attorneys' fees, expenses, and interest;

D.     Granting TEXO such further relief at law or in equity as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury, Under Fed. R. Civ. P. 38.

Dated:  August 30, 2019

Respectfully Submitted

*/s/ Raymond W. Mort, III*
Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com

**THE MORT LAW FIRM, PLLC**
100 Congress Ave, Suite 2000
Austin, Texas 78701
Tel/Fax: (512) 865-7950

**ATTORNEYS FOR PLAINTIFF**